UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 0 2003

Michael N. Milby
Clerk of Court

JAIME GARZA-ARIZPE, )
)
v. ) C.A. No.
) B-03-037
AARON CABRERA, ACTING DIRECTOR )
INS HLG/DO, and )
JOHN ASHCROFT, ATTORNEY )
GENERAL OF THE UNITED STATES. )
_____)

### PETITION FOR WRIT OF HABEAS CORPUS

Jaime Garza-Arizpe, ("Mr. Garza"), through the undersigned, files the instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001).

### I. JURISDICTION AND VENUE

1. Petitioner Garza is under a final order of removal, (Exhibit A, incorporated by reference), which order places significant restrictions on his liberty not shared by the populace at large, within the meaning of *Jones v. Cunningham,* 371 U.S. 236,240 (1963).

2. Respondent Cabrera maintains his offices in Harlingen, and Petitioner's removal proceedings were conducted in Los Fresnos, Texas, within the jurisdiction of this Court.

### II. THE PARTIES

3. Petitioner Garza has resided in the U.S. as a lawful permanent resident, ("LPR"), since 1982. His entire family resides lawfully in the U.S., including his wife and three minor U.S. citizen children. He has an excellent work history, and, apart from the incident leading to the instant proceedings, a clean record.

4. Respondent Aaron Cabrera is the Acting Director of Detention and Removal of the Harlingen, Texas, office of the Immigration and Naturalization Service. He is sued in his official capacity only.

5. Respondent John Ashcroft is the Attorney General of the United States. He is also sued in his official capacity only.

### III. THE FACTS

6. On November 12, 1998, pursuant to a previously negotiated plea bargain, Mr. Garza pled no contest to simple possession of marijuana, in exchange for a grant of deferred adjudication, pursuant to art. 42.12, sec. 5(a) Texas Code of Criminal Proc.

7. Under the policy exception articulated in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), based on an analogy to the Federal First Offender Act, ("FFOA"), 18 U.S.C. §3607, this would not have caused him to be deportable. Furthermore, at that time, simple possession of marijuana was not considered to be an aggravated felony, so that even if he were deportable, he would have been eligible for cancellation of removal under §1229b(a). *See, Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995). *See also, Matter of K-V-D-*, 22 I&N Dec. 1163 (BIA 1999). He was thereafter placed in removal proceedings, and notwithstanding binding BIA precedent, he was charged with deportability for having been convicted of an aggravated felony. He denied the charge, but, following *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999), which held that *Manrique* had been superceded by §1101(a)(48)(A), he conceded removability on the grounds that he had been "convicted" of a controlled substance offense.

8. During his hearing, Mr. Garza requested cancellation of removal, which was granted on April 18, 2000. INS appealed the finding that he had not been convicted of an aggravated felony, and possibly, that he merited relief in the exercise of discretion. While INS' appeal was pending, there were several significant developments in the law. *Matter of Roldan* was disapproved in *Lujan-Armendariz v. INS v. INS*, 222 F.3d 728 (9th Cir. 2000), on the grounds that it deprives immigrants such as Mr. Garza of Equal Protection, since,

2

under the FFOA, they would not be considered "convicted" if they had received equivalent rehabilitative treatment in federal, rather than state, court. Then, on May 11, 2001, the Fifth Circuit decided *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001), which, in strongly worded *dicta*, disapproved of *K-V-D-*. And although the pertinent language was, indeed, *dicta*, the BIA has followed this conclusion for cases arising within this judicial Circuit. And on February 8, 2002, the Third Circuit held in *Germier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002), that a state felony conviction for the offense of simple possession of a controlled substance is **not** an aggravated felony for immigration purposes. And on February 14, 2002, the BIA issued *Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002), declining to follow *Lujan-Armendariz* outside the Ninth Circuit, and holding that, in light of *Hernandez-Avalos*, it would not apply *K-V-D-* in this Circuit. Under *Salazar*, Mr. Garza is ineligible for any relief, and if removed, will be permanently separated from his family in the U.S..

9. INS' appeal remained pending at the BIA until January 14, 2003, when the BIA granted INS' appeal, on the grounds that, under the subsequent case law described above, Mr. Garza was no longer statutorily eligible for relief. Exhibit A.

10. On information and belief, it is alleged that a number of otherwise similarly situated LPRs, (LPRs granted deferred adjudication for an offense involving simple possession of a controlled substance), whose cases were finally adjudicated before *Hernandez-Avalos*, were granted said relief by Respondents.

11. Otherwise similarly situated LPRs whose cases arose within the Ninth Circuit are not considered to be subject to removal, and those whose cases arose in either the Second or Third Circuits,

continue to be eligible for relief from removal, in the form of cancellation of removal, 8 U.S.C. §1229b(a). *See, Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without trafficking element constitutes an "aggravated felony" under the INA only when that same crime would be punishable as a felony under federal Controlled Substances Act); and *U.S. v. Pornes-Garcia*, 171 F.3d 142 (2nd Cir. 1999) (statutory phrases may have different meanings for Sentencing Guidelines purposes and for immigration purposes, and, for immigration purposes, simple possession of a controlled substance is not an aggravated felony).

15. Given his lengthy residence in the United States, commencing at an early age, his strong family ties, employment history, and otherwise clean record, it is highly likely that, had the BIA adjudicated INS' appeal on the merits, it would have been dismissed, and proceedings terminated.

## V. THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

### 1. STATUTORY CONSTRUCTION
### a. AGGRAVATED FELONY

Mr. Garza first urges that the BIA erred as a matter of law in concluding that *Avalos-Hernandez, supra*, controls the issue of whether deferred adjudication disposition constitutes an aggravated felony. The language therein disapproving of *Matter of K-V-D-* was clearly *dicta*, and the Board should not have applied it herein. To the contrary, Mr. Garza asserts that *K-V-D-* was correctly decided, and that the BIA erred in not applying said decision herein.

4

### b. *MATTER OF ROLDAN, SUPRA.*

Mr. Garza also urges that, as a question of law, *Matter of Roldan, supra*, was incorrectly decided, and that new §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra*. *See*, Dissenting Opinion by Board Member Lory Rosenberg in *Matter of Salazar*, 23 I&N Dec. at 237-251. *See also*, Dissenting Opinion of Board Member Anthony Moscato, at 251-252.

### 2. EQUAL PROTECTION
### a. FEDERAL FIRST OFFENDER ACT

Mr. Garza next asserts that, for the reasons set forth in *Lujan-Armendariz, supra*, it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was prosecuted in state, or federal, court.

### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Garza also asserts that, given the national character of immigration law, it violates Equal Protection for the result of hiscase to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in the Second or Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### c. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

If INS' appeal from the April 18, 2000, decision granting relief had been adjudicated before May 11, 2001, (when *Hernandez-Avalos* was issued), Mr. Garza would have been subject to removal but

eligible for cancellation of removal, but would most probably have been granted that relief. It violates Equal Protection for the difference between remaining as an LPR, and being removed, and permanently barred, to be based solely on the timing of the proceedings. *See, Logan v. Zimmerman Brush,* 455 U.S. 422 (1982) (finding Due Process, and, per concurring opinion, Equal Protection, violations where statute terminated claims not receiving timely hearings).

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Garza has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar-Regino, supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Garza enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

The combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its

replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies" is an unconstitutional "conclusive presumption" that all LPRs convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4.  PROCEDURAL DUE PROCESS

The Board's decision deprives Mr. Garza of Procedural Due Process, as seen by Supreme Court cases involving "fair notice." To apply *Roldan* and *Hernandez-Avalos* to Mr. Garza retroactively converts a disposition which, at the time he negotiated his plea bargain, carried no immigration consequences at all into one which mandates deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid*. (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs even though, under state law,

there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A) retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See*, Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also*, *Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court recently held in *BMW of North America v. Gore*, 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause

8

violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties.*

For a lawful permanent resident such as Mr. Garza, there can be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra,* and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra.* And, as in *BNW of North America v. Gore, supra,* it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [1]

### 5. INTERNATIONAL LAW AND TREATY OBLIGATIONS

---

[1] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge,* 341 U.S. 223, 231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

Finally, Mr. Garza urges that the instant order violates international law, and treaty obligations between the United States and Mexico, hiscountry of origin.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

## VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.



February 10, 2003

## CERTIFICATE OF SERVICE

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the foregoing, with exhibit, was personally delivered to the office of Lisa Putnam, SAUSA, at 1701 Zoy, Harlingen, Texas, this 10th day of February, 2003.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JAIME GARZA-ARIZPE, | ) |
| | ) |
| v. | ) C.A. B- |
| | ) |
| AARON CABRERA, ACTING DIRECTOR | ) |
|   INS HLG/DO, and | ) |
| JOHN ASHCROFT, ATTORNEY | ) |
|   GENERAL OF THE UNITED STATES. | ) |
| _____ | ) |

EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5201 Leesburg Pike, Suite 1300
Falls Church, Virginia 22041

| | |
|---|---|
| **Esquivel, Roel, Esquire**<br>**101 N. 10th Street**<br>**Edinburg, TX 78539-0000** | **Office of the District Counsel/HL**<br>**P.O. Box 1711**<br>**Harlingen, TX 78551** |

**Name: GARZA-ARIZPE, JAIME**                A35-477-253

<u>D</u>ate of this notice: 01/14/2003

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
    HOLMES, DAVID B.

**U.S. Department of Justice**  
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

---

File: A35 477 253 - Harlingen                                         Date:

In re: JAIME GARZA ARIZPE

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Roel Esquivel, Esquire

ON BEHALF OF SERVICE:    Lisa M. Putnam  
                         Assistant District Counsel

CHARGE:

    Notice:  Sec.   237 (a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] -  
                          Convicted of controlled substance violation

                     237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -  
                     Convicted of aggravated felony

APPLICATION:  Cancellation of removal

       The Immigration and Naturalization Service appeals from the Immigration Judge's April 18, 2000, decision failing to sustain the aggravated felony charge, and granting the respondent cancellation of removal. The appeal will be sustained.

       The respondent is a native and citizen of Mexico who entered the United States in 1982 as a lawful permanent resident. The record reflects that he was convicted on November 12, 1998, in the 79th District Court of Brooks County, Texas, for the offense of possession of marihuana, a "state jail felony" as reflected in the conviction documents (Exh. 3, Exh. 4).

       On appeal, the Service asserts that the Immigration Judge erred in finding the respondent statutorily eligible for cancellation of removal, and further argues that the Immigration Judge should not have granted cancellation of removal to the respondent in the exercise of discretion. In its brief submitted on appeal, in addition to its other arguments, the Service contends that a recent decision issued by the United States Court of Appeals for the Fifth Circuit, within whose jurisdiction this matter arises, mandates the conclusion that the respondent is barred from eligibility for cancellation of removal based on his felony conviction in Texas for possession of marihuana. See *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001).

A35 477 253

We agree with the Service that the respondent's conviction constituted a "drug trafficking crime" under 18 U.S.C. § 924(c)(2), and thus an aggravated felony under the Immigration and Nationality Act, barring him from the relief of cancellation of removal. Subsequent to the Immigration Judge's decision, this Board held that the determination whether a state drug offense constitutes a "drug trafficking crime" under 18 U.S.C. § 924(c)(2), so as to constitute an aggravated felony under section 101(a)(43)(B), shall be made by reference to the law of the federal circuit in which the matter arises. *Matter of Yanez*, 23 I&N Dec. 390 (BIA 2002). In addition, the Board recently concluded, also subsequent to the Immigration Judge's decision, that under the Fifth Circuit decisions in *United States v. Hernandez-Avalos*, supra, and *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), a determination whether an offense is a felony for purposes section 924(c)(2) depends on the classification of the offense under the law of the convicting jurisdiction. *Matter of Santos-Lopez*, 23 I&N Dec. 419 (BIA 2002). Because the respondent's offense in this case is classified as a felony under applicable state law, it is therefore an aggravated felony within section 101(a)(43)(B) of the Act.

Consequently, the Immigration Judge erred in not finding the respondent removable as charged under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii), and in finding him eligible for cancellation of removal. Section 240A(a)(3) of the Act. Accordingly, the appeal will be sustained.

ORDER: The Service's appeal is sustained.

FURTHER ORDER: The respondent is ordered removed from the United States.

_____
FOR THE BOARD